```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

THE CINCINNATI INSURANCE COMPANY,

                    Plaintiff,             15-CV-6501T
v.

HARLEYSVILLE INSURANCE COMPANY,
et al,                                     DECISION
                                           and ORDER

                    Defendants.
_____
```

I.    **INTRODUCTION**

Plaintiff Cincinnati Insurance Company ("Cincinnati") brings this declaratory judgment action, under the Court's diversity jurisdiction, seeking interpretation of an insurance contract involving defendants Harleysville Insurance Company ("Harleysville"), University of Rochester Medical Center/Strong Medical Center ("UR" or "the Hospital"), LeChase Construction Corp., LeChase Construction Services LLC ("LeChase"), J.T. Mauro Co., Inc. ("Mauro"), and The Kimmel Company, Inc. ("Kimmel"). Cincinnati (the insurance carrier to Mauro) specifically claims that Harleysville (the insurance carrier to Kimmel) is required to defend and provide primary insurance coverage to LeChase, Mauro, and UR in a pending action in New York Supreme Court in which a Kimmel employee seeks damages for injuries sustained while performing repairs to a building owned by UR.

As a result of Harleysville's refusal to defend and indemnify Mauro, LeChase and UR in the state action, Cincinnati commenced the instant federal court action requesting, *inter alia*, a

determination that the Harleysville's insurance contract issued to Kimmel provides additional insured status to UR, LeChase, and Mauro.  Cincinnati now moves for summary judgment against Harleysville claiming that there are no material issues of fact in dispute and that it is entitled to judgment in its favor as a matter of law.  Harleysville has filed a cross-motion for summary judgment requesting the Court to interpret the Harleysville insurance contract in its favor and against Cincinnati's claims.  For the reasons set forth below, Cincinnati's motion for summary judgment is granted in part and denied in part.

## II. BACKGROUND

### A. Underlying incident and New York State action

On December 11, 2008, Jumall Little ("Little"), an employee of Kimmel was performing HVAC repairs ("the project") on the roof of a building owned by the University of Rochester's Strong Memorial Hospital when he fell through a skylight.  On August 3, 2011, Little commenced the underlying state action in Monroe County Supreme Court against UR/the Hospital, LeChase (general contractor for the project), Mauro (the subcontractor to LeChase), and Kimmel (the subcontractor to Mauro), seeking damages for personal injuries that he suffered as a result of the December 11, 2008 incident. Little based his claims against UR, LeChase, and Mauro in the underlying action on common law negligence and violations of New York Labor Law Sections 200, 240, and 241(6) for allegedly failing

to provide proper protection and equipment or to maintain safety devices at the premises. UR, LeChase, and Mauro filed third-party claims against Kimmel, Little's employer, in that action.

**B.   Contracts and Subcontracts**

UR, owner of the premises at issue, had entered into the prime contract with general contractor LeChase to provide repairs to the Hospital's HVAC system. LeChase thereafter entered into a subcontract with Mauro (the "Mauro subcontract") wherein Mauro agreed to perform the project under the prime contract and procure and maintain primary and non-contributory general commercial liability ("GCL") insurance, naming LeChase and UR as additional insureds.

Mauro then entered into a subcontract with Kimmel (the "Kimmel subcontract") wherein Kimmel agreed to perform the HVAC project, perform its duties in accordance with the Mauro subcontract and the prime contract, and assume all the obligations and responsibilities assumed by Mauro toward LeChase and UR. Kimmel was further obligated to indemnify and defend "J.T. Mauro Co., Inc. [and] the Owner" in connection with all claims for bodily injuries caused in whole or in part by any negligent act or omission of Kimmel and its employees. (Docket No. 22-I (Attachment No. 3.1A)). Kimmel was also required to maintain a primary and non-contributory CGL insurance policy naming "Owner and all other parties required of [Mauro]" as "insureds on the CGL, using ISO Additional Insured Endorsement[.]"

(Docket No. 22-I (Attachment No. 3.1B)). This language is clear and unambiguous that pursuant to the Kimmel subcontract, Kimmel was specifically required to maintain a CGL insurance policy naming only Mauro and UR as additional insureds. It is noteworthy that an attachment to the Kimmel subcontract, entitled "Certificate of Liability Insurance," refers directly to the Harleysville coverage and provides the following: "Certificate Holder [Mauro] and UR/Strong are named as Additional Insureds with respect to operations performed at TKC#3-3542, U/R 6-6900." (Docket No. 22-I, p. 11). No mention is made of LeChase, specifically, and, therefore, it cannot be considered an additional insured to the Harleysville policy.

>The Kimmel subcontract, as to performance, provides:

>Subcontractor agrees to perform the work identified below in accordance with this Subcontract, any attachments and all documents comprising the Prime Contract between [Mauro] and [LeChase] and [UR], all of which are incorporated by reference ("The Contract Documents"). The Subcontractor shall assume toward [Mauro] all the obligations and responsibilities which [Mauro] assumes toward [LeChase] and [UR], except as otherwise expressly provided in this Subcontract.

(Docket No. 22-I, p. 2). This provision requires Kimmel to "assume toward [Mauro] all the obligations and responsibilities which [Mauro] assumes toward [LeChase] and [UR]" in the performance of the contract. Yet no reference to LeChase is listed in the insurance requirements (Attachment 3.1B) of the Kimmel subcontract to specifically include it as an additional insured.

**C.     Insurance policies**

Cincinnati issued a CGL insurance policy to Mauro with effective dates of March 1, 2008 to March 1, 2009, policy numbered CPP 082 26 45, with limits of $1,000,000.00 per occurrence, and $2,000,000.00 in the aggregate (the "Cincinnati policy"). Harleysville issued a CGL policy to Kimmel for the period of March 1, 2008 to March 1, 2009 with limits of $1,000,000.00 per occurrence, and $2,000,000.00 in the aggregate (the "Harleysville policy"). The Harleysville policy provided the following provision for additional insureds: "ADDITIONAL INSURED – OWNERS, LESSEES, OR CONTRACTORS – AUTOMATIC STATUS WHEN REQUIRED IN CONSTRUCTION AGREEMENT WITH YOU." Cincinnati's motion for summary judgment, Exhibit A.  This language is clear and unambiguous that the Harleysville policy applies to "additional insureds - owners, . . . or contractors" automatically when required in a construction agreement with Kimmel.

**D.     Additional Insured Endorsements**

The dispute between Cincinnati and Harleysville centers on their conflicting interpretations of two endorsements contained in the Harleysville policy: CG 20 10 and CG 20 33.  Endorsement CG 20 10 provides that an additional insured includes the persons or organizations shown in the Schedule

> but only with respect to liability for 'bodily injury' . . . caused, in whole or in part by:
> 1. Your acts or omissions; or
> 2. The acts or omissions of those acting on your behalf;

>     in the performance of your ongoing operations for the
>     additional insured(s).

Endorsement CG 20 33 provides additional insured status to "any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy."

**E.   The present action**

Cincinnati demanded that Harleysville provide a defense and indemnification to each of the defendants in the underlying state action, which include Mauro, LeChase, and UR.  On November 14, 2011, Harleysville disclaimed coverage to UR and LeChase, following which Cincinnati commenced this action on August 20, 2015 (Docket No. 1) and moved for summary judgment on May 16, 2016 requesting the Court to determine that UR, LeChase, and Mauro are to be considered additional insureds under the Harleysville policy (Docket No. 22).  On July 15, 2016, Harleysville filed a cross-motion for summary judgment (Docket No. 27).

**III. <u>DISCUSSION</u>**

**A.   Summary Judgment Standard**

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted if the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When considering a motion for summary judgment, all genuinely

disputed facts must be resolved in favor of the party against whom summary judgment is sought. See Tolan v. Cotton, ___, U.S., ___ 134 S. Ct. 1861, 1863 (2014).  If, after considering the evidence in the light most favorable to the nonmoving party, the Court finds that no rational jury could find in favor of that party, a grant of summary judgment is appropriate. See Scott v. Harris, 550 U.S. 372, 380 (2007)(citing Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-587 (1986)).

**B.  Interpretation of the Harleysville Policy clearly establishes that Mauro and UR qualify as additional insureds under this policy.**

Because the parties do not dispute the material facts underlying the claim, this case turns on the interpretation of the Harleysville policy whether LeChase and UR qualify as additional insureds.  It is undisputed that this diversity action is governed by New York law.  "Under New York insurance law, the plain language of an insurance policy, read 'in light of common speech and the reasonable expectations of a businessperson' will govern if the language is unambiguous." VAM Check Cashing Corp. v. Fed. Ins. Co., 699 F.3d 727, 729 (2d Cir. 2012), quoting Belt Painting Corp. v. TIG Ins. Co., 100 N.Y.2d 377, 383(2003).

> A reviewing court must decide whether, affording a fair meaning to all of the language employed by the parties in the contract and leaving no provision without force and effect, there is a reasonable basis for a difference of opinion as to the meaning of the policy. If this is the case, the language at issue would be deemed to be ambiguous and thus interpreted in favor of the insured.

Id., quoting Fed. Ins. Co. v. IBM, 18 N.Y.3d 642, 646 (2012).

In opposition to Cincinnati's motion for summary judgment and in support of its cross-motion for summary judgment, Harleysville agrees that Mauro is an additional insured under its policy but denies that it owes additional insured status to UR or LeChase. Harleysville argues that the CG 20 33 privity endorsement confers additional insured status only to entities in contractual privity with Kimmel. Therefore, because there were no contracts in existence between Kimmel and UR or LeChase on the date of the accident, they cannot claim additional insured status.

Cincinnati agrees that CG 20 33, "the Privity Endorsement[,] does not provide additional insured status to U of R or LeChase." Cincinnati's memorandum of law in opposition (Docket No. 29-4), p. 2. Cincinnati asserts, however, that the GC 20 10 endorsement provides "automatic additional insured status to U of R and LeChase." Cincinnati's memorandum of law in opposition (Docket No. 29-4), p. 2.

Harleysville responds that GC 20 10 applies only "to entities identified in the attached 'Schedule.' The 'Schedule' is blank and, therefore, the reader is referred to the Declarations Page for further instructions," which provides:

> Additional Insured - Owners, Lessees Or
> Contractors - Scheduled Person Or Organization
> Designation of Premises:
> Location 001 Building 001
>
> Name of Person or Organization: Rochester Institute Of
> Technology

>    120 Lomb Memorial Dr
>    Rochester NY 14623
>    Contractor
>
>    Additional Insured - Owners, Lessees Or
>    Contractors - Automatic Status When Required In
>    Construction Agreement With You
>    ADDITIONAL INSURED - OWNERS, LESSEES, OR
>    CONTRACTORS - AUTOMATIC STATUS WHEN
>    REQUIRED IN CONSTRUCTION AGREEMENT WITH YOU.

Harleysville Policy MPA8E1653 (Docket No. 22-9 (p. 16-17, 67-68)). Cincinnati argues that Harleysville fails to recognize the second "additional insured" provision, as shown above, which covers those in "construction agreements" with Kimmel. Cincinnati's memorandum of law in opposition (Docket No. 29-4), p. 5. Harleysville responds that the privity endorsement (CG 20 33) must be read in conjunction with CG 20 10 (covering those in construction agreements with Kimmel), arguing that to do otherwise would render the privity endorsement meaningless. Harleysville does concede, however, that Kimmel was required to provide coverage to UR and Mauro as additional insureds under the Kimmel subcontract.

   The Court finds the language of the Harleysville policy to be unambiguous. Endorsement CG 20 33 clearly confers additional insured status only upon persons or organizations for whom the insured is "performing operations" as provided in a written agreement that requires the insured to add that person or organization as an additional insured to the policy. A plain reading of the Kimmel subcontract reveals that Kimmel agreed to name Mauro and UR as additional insured parties. At no point in

the subcontract does Kimmel expressly agree to add LeChase to the Harleysville policy as an additional insured. Cincinnati's argument that the provision in the Kimmel subcontract in which Kimmel agreed to assume toward Mauro all the obligations and responsibilities that Mauro assumed toward LeChase in the Mauro subcontract obligated Kimmel to name LeChase as an additional insured to the Harleysville policy is unavailing. It is well settled that the requirement to procure additional insured coverage must be specifically stated in a construction contract before it can be interpreted as such. "Under New York law, incorporation clauses in a construction subcontract, which incorporate by reference clauses in the prime contract into the subcontract, bind a subcontractor only to the prime contract provisions relating to the scope, quality, character and manner of the work to be performed by the subcontractor." S. Leo Harmonay, Inc. v. Binks Mfg. Co., 597 F. Supp. 1014, 1024 (S.D.N.Y. 1984), aff'd sub nom. Harmonay Inc. v. Binks Mfg. Co., 762 F.2d 990 (2d Cir. 1985). The Kimmel subcontract contains no clear language requiring Kimmel to provide additional insured coverage to LeChase. While this may have been contemplated by the parties, it was never expressly stated in the general conditions or the insurance requirements of the subcontract, nor does the "Certificate of Liability Insurance" attached to the Kimmel subcontract reveal any such intention.

Thus, Cincinnati's argument that under GC 20 10 the second additional insured designation listed in the policy's Declarations,

which provide that owners, lessees, or contractors are automatically entitled to additional insured status when required in a construction agreement with Kimmel, is unsupported as to LeChase. While both parties agree that GC 20 10 would not require contractual privity with Kimmel, the Court finds that this endorsement is limited to entities identified as scheduled person(s) or organization(s) in the Declarations. Cincinnati contends that although neither LeChase or UR are actually named in the Declarations, the second additional insured designation, which provides for "Automatic Status When Required In Construction Agreement With" Kimmel, triggers their coverage under the Harleysville policy.

A plain reading of CG 20 10 precludes this interpretation as to LeChase since it expressly requires that any additional insured must be listed "in the Schedule." The Schedule, which is blank, contains headings identifying additional insured persons or organizations and locations of the covered operations. The reader is then directed to the Declarations for a listing of the Scheduled entities. A review of the Declarations reveals that neither LeChase nor UR have been named as a "Scheduled Person or Organization." Consequently, LeChase cannot claim additional insured status pursuant to CG 20 10. Affording a fair meaning to all of the language employed by the parties in this policy, the Court concludes that there is no reasonable basis for a different interpretation of this endorsement. Consequently, the Court finds

that LeChase does not qualify for additional insured status coverage under the Harleysville policy.

**B.    Reimbursement of fees and costs in defense of Mauro.**

Cincinnati contends that it is entitled to reimbursement of attorneys' fees and costs incurred during its defense of Mauro in the underlaying action.  Harleysville responds that Cincinnati elected to control the defense of Mauro as a strategic measure and, therefore, should bear the costs of such a defense.  Cincinnati replies that Harleysville agreed to conditionally represent Mauro "subject to all terms and conditions of our insured's Commercial Liability Policy" only and declined to indemnify Mauro.  The record reveals that Harleysville initially disclaimed additional insured coverage for Mauro on November 14, 2011.  However, in April 2012, Harleysville subsequently stated that it would provide a qualified defense to Mauro subject to policy terms and conditions and without the reimbursement of past defense costs.  Based on this showing, and because Harleysville concedes that it owes a duty to defend and indemnify Mauro as an additional insured under the Harleysville policy, Cincinnati is entitled to reimbursement for costs related to its defense of Mauro up to the date of this Order.

**IV. CONCLUSION**

For the reasons set forth above, the Court finds that Harleysville is required to afford coverage to Mauro and UR as additional insureds under its insurance policy with Kimmel but not

as to LeChase, which the Court finds does not qualify as an additional insured under the same policy. Cincinnati's motion for summary judgment seeking declaratory judgment is therefore granted as to Mauro and UR but denied as to LeChase. Harleysville's cross-motion for summary judgment seeking to disclaim insurance coverage is granted as to LeChase only and denied as Mauro and UR. Therefore, it is hereby

ORDERED that, in the underlying state court action, Harleysville is required to defend and indemnify Mauro, which is determined to be an additional insured under the Harleysville policy issued to Kimmel; and it is further

ORDERED that, in the underlying state court action, Harleysville is required to defend and indemnify the University of Rochester Medical Center/Strong Medical Center, which is determined to be an additional insured under the Harleysville policy issued to Kimmel; and it is further

ORDERED that, in the underlying state court action, Harleysville is not required to afford insurance coverage to LeChase, which is determined not to be an additional insured under the Harleysville policy; and it is further

ORDERED that Harleysville is required to reimburse Cincinnati for reasonable costs and fees incurred by Cincinnati in its defense of Mauro in the underlying state action; and it is further

ORDERED that the Clerk of the Court close this case.

**ALL OF THE ABOVE IS SO ORDERED**.

					S/ Michael A. Telesca
					_____
					MICHAEL A. TELESCA
					United States District Judge

Dated:	Rochester, New York
	October 25, 2016